USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/7/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA :
:  19-CR-808 (VEC)
:
-against- :  OPINION AND ORDER
:
:
:
ALSENY KEITA, :
:
                       Defendant. :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      On March 23, 2021, Defendant Alseny Keita pled guilty to one count each of wire fraud, bank fraud, and conspiracy to commit wire fraud and bank fraud. *See* Plea Hearing Tr., Dkt. 240 at 29:17–30:10. On September 30, 2021, he was sentenced to eighteen months imprisonment, followed by five years' supervised release, and was ordered to forfeit $305,385.57. *See* Judgment, Dkt. 296; Prelim. Order of Forfeiture, Dkt. 303; Order of Restitution, Dkt. 305; *see also* Sentencing Tr., Dkt. 333 at 19:3–20:5, 33:24–40:10. On October 13, 2021, Mr. Keita filed a notice of appeal. Notice of Appeal, Dkt. 300. Mr. Keita intends to argue on appeal that the Court erroneously calculated his Sentencing Guidelines ("Guidelines") range because it used an erroneous loss calculation. *See* Def. Mot., Dkt. 352 at 7–8, 10–14. He also plans to argue that the sentencing disparity between himself and conspirators Messrs. Toure and Dukuray is unfair. *See* Def. Mot. at 7–8. On December 13, 2021, Mr. Keita moved for bail pending appeal. *See id.* Mr. Keita argues that he is entitled to bail pending appeal because he is not dangerous or likely to flee, and because his appeal raises a substantial question of law regarding the Guidelines

calculation[1] and that, if the appeal is successful, will result in a reduced sentence of imprisonment less than the expected duration of the appeal process. *See generally id.* The Government opposes the motion. *See* Gov. Opp., Dkt. 364. For the reasons discussed below, Mr. Keita's motion for bail pending appeal is DENIED. Mr. Keita is ordered to surrender to his designated institution or to the Southern District of New York U.S. Marshals Service not later than February 7, 2022. *See* Order, Dkt. 367.

## BACKGROUND

Mr. Keita was indicted on November 13, 2019, for wire fraud, bank fraud, and conspiracy to commit wire fraud and bank fraud. *See* Superseding Indictment, Dkt. 192. The charges grew out of his participation in a conspiracy that included his friends Issiago Sylla and Salifou Conde. Messrs. Conde and Sylla worked for a courier company. Their job was to pick up checks that had been returned to the post office as undeliverable after having been sent out as rental assistance from the New York City Human Resources Administration ("HRA"). While Messrs. Sylla and Conde delivered many of the undeliverable checks to HRA as required, beginning in about August 2016, they began to steal some checks on a regular basis. They and their conspirators, including Mr. Keita, deposited the stolen checks into a variety of bank accounts, then withdrew the proceeds.

Although the scheme began in August 2016, the earliest direct evidence of Mr. Keita's involvement is a picture from a bank surveillance camera showing him depositing a stolen check into an account in the name of Okoli Soumah on May 16, 2018. His involvement in the scheme

---

[1] While Mr. Keita intends to challenge on appeal the disparity between his sentence and those of Messrs. Toure and Dukuray, *see* Def. Mot. at 7–8, Mr. Keita's motion to remain on bail pending appeal focuses exclusively on the Guidelines calculation, *see id.* at 10–14; *see also generally* Def. Reply, Dkt. 366.

continued until at least May 2019, when he was again caught on a bank surveillance camera, this time depositing a stolen check into an account in the name of Issouf Makeri.

Mr. Keita pled guilty to all counts. *See* Plea Hearing Tr. at 29:17–30:10. In its *Pimentel* letter, the Government indicated that its Guidelines calculation yielded a Guidelines range of 27 to 33 months' imprisonment based, in part, on a 12-point enhancement because "the offense involved loss greater than $250,000, but less than $550,000." *See* Feb. 26, 2021 *Pimentel* Letter at 2. The Probation Department, in its Presentence Investigation Report, concluded more specifically that the loss amount attributable to Mr. Keita was $305,385.57, based on the total value of all stolen checks deposited either into Mr. Keita's bank account or into accounts as to which there is surveillance camera evidence proof that Mr. Keita had access. *See* Revised Presentence Investigation Report, Dkt. 316 ¶ 26 ("In total, KEITA deposited checks or made cash withdrawals from six different accounts in KEITA's name and/or controlled by KEITA (the KEITA Accounts). The total value of hundreds of HRA Supplement Checks deposited into the KEITA Accounts was $305,385.57. Although surveillance is not available for most of the transactions in the KEITA Accounts, surveillance photographs showed KEITA, the co-defendants, and co-conspirators using those accounts.").[2]

Prior to sentencing, the parties filed a stipulation of facts that they agreed the Court could rely on "to determine the appropriate amounts of loss under the United States Sentencing Guidelines, forfeiture, and restitution." *See* Stipulation of Facts, Dkt. 278 at Ex. A at 3. The parties agreed that: (1) Mr. Keita had extensive communications with Messrs. Sylla and Conde,

---

[2] Based on the evidence introduced during the trial of co-defendant Conde, the Court was well aware that the Government's ability to get surveillance camera evidence from the banks into which stolen funds were deposited was hit or miss. The difficulty was a function of the sophistication of the scheme and the lapse of time between the checks being stolen (and then deposited and withdrawn from various bank accounts) and the Government's ability to trace stolen funds to particular accounts at particular banks. Given that lapse of time, it was not surprising that many banks no longer had evidence from surveillance cameras when requested.

the conspirators who actually stole the checks; and (2) there were bank surveillance photographs that showed Mr. Keita depositing stolen checks into six bank accounts and withdrawing funds from those accounts. *See id.* at 1–3. The stipulation included schedules of deposits of stolen checks into and withdrawals of proceeds from each account into which there was surveillance camera evidence that Mr. Keita had access. *See id.* at 4–22.

Mr. Keita, in his sentencing submission, argued that the loss attributable to him was just $18,612.26 — yielding a Guidelines range of 6 to 12 months — reflecting the value of: (1) the stolen checks for which the Government has direct proof (i.e., bank surveillance photo) Mr. Keita handled; (2) the cash withdrawals by Mr. Keita of stolen proceeds for which the Government has similar direct evidence; and (3) the stolen checks deposited into his own bank account. *See* Def. Sentencing Submission, Dkt. 279 at 3–4. The Government, in its sentencing submission, argued that the loss amount was $305,385.57, representing the total value of the stolen checks deposited by Mr. Keita and his co-conspirators into bank accounts to which the Government could unquestionably prove Mr. Keita had access. Gov. Sentencing Submission, Dkt. 278 at 6. The Government pointed to substantial circumstantial evidence as proof that Mr. Keita's involvement in the scheme went beyond those few dates on which he was captured on surveillance cameras, including: (1) the pattern of deposits and withdrawals as evidence of Mr. Keita's extensive involvement in the scheme; (2) the frequent contact between Mr. Keita and Messrs. Sylla and Conde; and (3) the sophistication of the scheme. *Id.* at 6–10. The Government argued that the evidence collectively leaves little doubt that Mr. Keita "played an important role in the HRA Check Fraud scheme, and . . . was well-aware of the full scope of the fraud." *Id.* at 9.

At Mr. Keita's sentencing hearing on September 30, 2021, the Court heard arguments about the appropriate loss calculation,³ *see* Sentencing Tr. at 10:15–16:7, before concluding that the loss amount was $305,385, *see id.* at 16:18–18:23. The Court found by a preponderance of the evidence that "the full amount of checks that flowed through the accounts into which Mr. Keita deposited or withdrew funds was within the scope of the defendant's conspiratorial agreement and were foreseeable to him." *Id.* at 18:16–20. The Court held that it was "simply not credible" that the only fraudulent transactions in which Mr. Keita participated were those caught on surveillance cameras, or that Mr. Keita was not aware of the larger scheme in which he was involved given: (1) his access to ATM cards and the balances for multiple accounts in other peoples' names; (2) the structure of the scheme, with multiple transactions being made at the same bank on the same day, not all of which were captured by surveillance cameras, *see* Revised Presentence Investigation Report ¶ 26 (noting that "surveillance is not available for most of the transactions in the KEITA Accounts"); (3) the duration of Mr. Keita's involvement in the scheme; (4) the fact that Mr. Keita deposited stolen checks into his own bank account; (5) Mr. Keita's close relationship to Messrs. Sylla and Conde; and (5) Mr. Keita's post-arrest statements and relative sophistication, *see* Sentencing Tr. at 16:22–18:15. Accordingly, the Court agreed with the Government that the applicable Guidelines range was 27 to 33 months' imprisonment, but sentenced Mr. Keita to a below-Guidelines sentence of 18 months' imprisonment, to be followed by five years' supervised release.⁴ *Id.* at 19:3–20:5, 33:24–40:10. Mr. Keita has appealed his sentence, *see* Notice of Appeal, and is seeking bail pending appeal, *see* Def. Mot.

---

³ The Court also heard arguments about, and ultimately rejected, the applicability of any mitigating role reduction. *See* Sentencing Tr. at 6:4–10:14, 18:24–19:2, 37:4–38:2.

⁴ The Court's imposition of a below-Guidelines sentence undermines Mr. Keita's argument that a favorable ruling on his appeal would result in a reduced term of imprisonment less than the expected duration of the appeal process. The Guidelines are not mandatory and, as the Court noted at the time of sentence, it would have imposed

## DISCUSSION

Because "a guilty verdict greatly reduces a defendant's expectation in continued liberty," the relevant statutory guidance "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319, 320 (2d Cir. 2004). A court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless" the Court finds: (1) by clear and convincing evidence that the person is not dangerous or likely to flee; and (2) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in, among other things, a reduced sentence to a term of imprisonment less than the anticipated length of the appeal process. 18 U.S.C. § 3143(b); *see also United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985). A "substantial question" is "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (internal quotation marks and citation omitted). The defendant bears the burden of demonstrating that this requirement is met. *Id.*

The Government does not dispute that Mr. Keita is not dangerous or likely to flee and that his appeal is not for the purpose of delay, *see* Gov. Opp. at 4 ("Even assuming *arguendo* that the defendant does not pose a risk of flight and is not a danger to others and that a forthcoming appeal would not be for the purpose of delay, bail pending appeal would not be appropriate because such an appeal would not raise a substantial question of law."); accordingly, Mr. Keita's motion turns on whether he has raised a substantial question of law likely to result in a reduced sentence less than the anticipated length of the appeal process. He has not.

---

the same sentence even if the loss amount were as much as $100,000 less than the $305,385 used to calculate the Guidelines. *See* Sentencing Tr. at 16:8–17, 18:22–23.

Mr. Keita argues that the Court failed to make sufficiently particularized findings to justify the $305,385 loss amount because the Court: (1) did not justify the inclusion of transactions made prior to the date on which the Government has direct evidence of his participation in the scheme; (2) held Mr. Keita accountable for the actions of distant or unknown coconspirators; and (3) relied on circumstantial evidence about transactions close in time and location to infer greater involvement and knowledge by Mr. Keita than was true.[5] *See* Def. Mot. at 11–13.

Mr. Keita's arguments are belied by the record during which the Court articulated with specificity reasons for concluding that the appropriate loss amount was $305,395, explaining that it was not credible that Mr. Keita's involvement was limited to those transactions that happened to be caught on surveillance cameras or that Mr. Keita was not aware of the larger scheme in which he was involved. *See* Sentencing Tr. at 16:18–18:23 (citing as evidence: Mr. Keita's access to bank cards and the account balances for multiple accounts that were not in his name nor in the names of Messrs. Sylla or Conde, who provided him with the stolen checks; the pattern of deposits and withdrawals; the duration of Mr. Keita's involvement in the scheme; Mr. Keita's use of his own bank account to facilitate the scheme; Mr. Keita's post-arrest statements in which he tried to distance himself from the identified accounts by insisting that he never looked at the names on the ATM cards or checks he was given; Mr. Keita's relative sophistication; and his close contact with co-conspirators); *see also United States v. Norman*, 776 F.3d 67, 79 (2d Cir. 2015) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference.") (quoting Guidelines § 2B1.1 Application Note 3(C)). Based

---

[5] The Court offered to hold a *Fatico* hearing; Mr. Keita declined the offer. *See* Sentencing Tr. at 12:5–13:14.

on all of that circumstantial evidence, the Court's loss calculation was not a "'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (citation omitted); *see also Norman*, 776 F.3d at 79 (a sentencing court "need only make a reasonable estimate of the loss . . . based on available information") (quoting Guidelines § 2B1.1 Application Note 3(C)).

In short, Mr. Keita has failed to demonstrate that his appeal raises a substantial question of law as to the correct Guidelines calculation.

## CONCLUSION

Because Mr. Keita has not demonstrated that his appeal raises a substantial question of law that, if successful, would result in a reduced sentence to a term of imprisonment less than the expected duration of the appeal process, his motion for bail pending appeal is DENIED. The Clerk of Court is respectfully directed to close the open motion at docket entry 352. Per the Court's December 29, 2021 Order, *see* Dkt. 367, Mr. Keita is ordered to surrender to his designated institution or to the Southern District of New York U.S. Marshals Service not later than noon on **February 7, 2022**.

**SO ORDERED.**

Date: **January 7, 2022**
      New York, NY

                                         **VALERIE CAPRONI**
                                         **United States District Judge**